In the Matter of Bill K. HARGIS and
Marilyn E. Hargis, Debtors.

PALMER & PALMER, P.C., Appellant,

v.

UNITED STATES TRUSTEE, Appellee.

No. 89–1155.

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1989.

P. Michael Jung, Royal H. Brin, Jr., Jeffrey R. Fine, Strasburger & Price, Dallas, Tex., for appellant.

William S. Parkinson, Dallas, Tex., for appellee.

Before CLARK, Chief Judge, GEE, and SMITH, Circuit Judges.

GEE, Circuit Judge:

Today we decide whether the district court properly upheld an order of a United States Bankruptcy Court requiring a law firm to disgorge and pay into the registry of the court money paid by the debtor to the law firm for services rendered.

### Facts

Palmer & Palmer, P.C. began representing Mr. and Mrs. Hargis in 1981, continuing to represent them in various matters for the next six years. Mr. and Mrs. Hargis fell behind on their payments to Palmer, and in 1983 Palmer secured a lien on certain of Mr. and Mrs. Hargis' art work for payment of the outstanding bill. Thereafter, Mr. and Mrs. Hargis filed a Chapter 11 bankruptcy proceeding.

Mr. Hargis died in 1984; his life was insured for $700,000; and Mrs. Hargis was the beneficiary under the policy. Mrs. Hargis used a portion of the insurance proceeds to pay past due statements for services by Palmer, rendered in connection with the bankruptcy proceeding and in other matters. Palmer was paid a total of $56,322.69, and the lien held by it was released.

In 1987, the bankruptcy court held a hearing on certain motions filed by the United States Trustee relative to Mr. and Mrs. Hargis' pre-petition relationship with Palmer. At the hearing, the evidence showed the payments that Palmer had received from Mrs. Hargis after the bankruptcy filing. The court also determined that no application to employ Palmer & Palmer had been filed and that no disclosure of the payments made them had been made of record in the case. As a result of these findings, the court entered orders which, among other things, (1) disqualified Palmer from representing Mrs. Hargis in any bankruptcy proceeding; (2) directed Palmer to pay into the registry of the court all monies received from Mrs. Hargis while a debtor-in-possession; (3) assessed a $25,000 sanction against Palmer; and (4) dismissed the bankruptcy proceeding. 73 B.R. 622.

Palmer appealed to the district court, which upheld the disgorgement order but reversed the imposition of sanctions. Palmer now appeals the district court's or-

der upholding the disgorgement order and, thereby, denying it attorneys' fees.

### Discussion

■ There can be no doubt that, as counsel for Mr. and Mrs. Hargis in the bankruptcy proceeding, Palmer & Palmer subjected itself to the power of the bankruptcy court. Nevertheless, because Mrs. Hargis did not become entitled to the $700,000 in life insurance proceeds until more than 180 days after the filing of the bankruptcy petition, the proceeds were not a part of the bankruptcy estate. 11 U.S.C. Section 541(a)(5)(C). That being so, the bankruptcy court had no authority to order disgorgement of the funds received by Palmer, which consisted wholly of non-estate assets.[1] Even the bankruptcy trustee concedes that there exists no statute or rule proscribing the payment of pre-petition debts with non-estate assets. From his perspective, and estate assets not being involved, the situation is precisely as though Palmer & Palmer had rendered its services *gratis*.

■ Section 549(a), which authorizes the trustee to avoid post-petition transfers, speaks only to property "of the estate." 11 U.S.C. Section 549(a). There is ample authority indicating that transfers made to pre-petition creditors out of non-estate assets may not be avoided. *In re Vickery*, 63 B.R. 222, 224 (Bankr.E.D.Tenn.1986) (payment to pre-petition creditor out of post-petition income of Chapter 7 debtor not avoidable); *In re DeLeonard*, 44 B.R. 922, 923–24 (Bankr.E.D.Pa.1984) (same); *In re Whisenton*, 40 B.R. 468, 469 (Bankr.D.D.C. 1984) (same); *see In re Coco*, 67 B.R. 365, 373 n. 11 (Bankr.S.D.N.Y.1986) (escrow funds belonging to third party transferred post-petition to attorney-creditor); *In re M.J. Sales & Distributing Co.*, 25 B.R. 608, 612–13 (Bankr.S.D.N.Y.1982) (funds of surety paid post-petition to pre-petition creditor). The cases cited by the trustee to the contrary are all patently distinguishable, either because they involved payment from the estate or because they concerned situations in which section 329 was found specifically applicable.[2]

■ Nor is there any general bankruptcy policy that is disserved by permitting such payments. The avoidance powers of the bankruptcy trustee and the power of the bankruptcy court to regulate professional services are exclusively geared toward protecting the rights of creditors via protection of the bankruptcy estate. Where, as here, payment of a claim is made out of non-estate assets, this goal is in no way served by requiring disgorgement of the payment. To the contrary, the other creditors are more likely helped than harmed, as the payment of one creditor out of non-estate assets frees up estate assets for payment of the other creditors and allows each to take a correspondingly larger slice of the bankruptcy pie.

■ The Trustee's contention that debtors-in-possession owe an absolute fiduciary duty not to prefer one creditor over another is likewise unpersuasive. To be sure, a fiduciary duty exists—but only with respect to *estate* funds. The debtor may do what he will with non-estate funds. This duty is equivalent to that of the trustee of a trust. By arguing that the debtor-in-possession owes a duty with respect to non-estate funds, the Trustee, in effect, maintains that a trustee of a trust has a duty to beneficiaries, not only with respect to the res of the trust, but also with respect to the trustee's own personal property. Such a proposition is absurd under the law of trusts; there is no distinction that makes it any less absurd in the bankruptcy context.

The trustee's final argument, that preferential payments out of non-estate property impermissibly harm creditors whose claims may survive bankruptcy, in particular the IRS, must also be rejected. While it is true that certain claims are not dischargeable in bankruptcy, and likewise that

---

1. We note, however, that it was within the bankruptcy court's authority to disqualify Palmer & Palmer as counsel for Mr. and Mrs. Hargis.

2. *See Lavender v. Wood Law Firm*, 785 F.2d 247, 248 (8th Cir.1986); *In re WPMK, Inc.*, 42 B.R. 157, 161 (Bankr.D.Haw.1984); *In re Kero–Sun, Inc.*, 58 B.R. 770, 780 (Bankr.D.Conn.1986).

use of non-estate assets may hinder the post-bankruptcy satisfaction of these claims, the intended congressional solution was not the establishment of sweeping regulatory power over non-estate property. Arguably, any use of such property harms creditors whose claims may survive bankruptcy; yet there are no legislative inhibitions upon use of these funds. In many cases, non-estate property will be exempt from such claims. Where it is not, creditors may seek relief from the stay to pursue such property or may challenge any transfers of it post-bankruptcy by resort to the law of fraudulent conveyances. But there is no general avoidance power vested in the bankruptcy court.

The bankruptcy court's order, requiring disgorgement by Palmer of the payments received from Mrs. Hargis, was improper and Palmer is entitled to a return of its fees.

REVERSED.